LAWSON vs. SCHNELLEN and others.

*Municipal Corporations — Railroad Aid — Injunction to prevent issue of bonds.*

1. It is the settled law of this state, that *injunction* is the proper remedy to prevent the execution and delivery, by its officers, of the negotiable bonds or other commercial obligations of a town or other municipal corporation, where it appears, upon the complaint of a taxpayer likely to suffer pecuniary loss, that the officers threaten such execution and delivery in contravention of the authority given them by law for that purpose, or in violation of the trust reposed in them by the legislature, or by the taxable inhabitants of the municipality. 25 Wis., 167; 28 id., 583.

2. The writ will issue in such a case, not only to give effect to the safeguards and restraints imposed by the legislature or by the constitution of the state, but also *to enforce the terms and conditions prescribed by the voters of the town.*

3. In case of an agreement to issue bonds of a town in aid of a railroad upon a proposition made by the railroad company, the voters or inhabitants of the town are the contracting parties on the one side; and the board of supervisors (or, in this case, the chairman of such board and the town clerk) are merely their agents. 13 Wis., 432.

4. Ch. 126, Laws of 1869, authorizes the issue of railroad aid bonds by certain towns, " upon such terms and conditions as shall be agreed upon by and between the town and the railroad company," which terms and conditions are to be contained in " a definite proposition in writing, signed by the president or secretary of said railroad company," etc. Provision is made for an election to be made by the legal voters of the town, and that, in case of a majority of votes " for

Lawson vs. Schnellen and others.

the railroad proposition," the proper officers shall cause the bonds voted to be issued and delivered to the company, " on performance by the said company of the terms and conditions contained in said railroad proposition." The terms of a railroad proposition made to the town of M. by a railroad company (under said act), were such that the bonds of said town in a certain sum were to be delivered to the company only in case it should have constructed a railroad track to the Wolf river, either from a certain point in the town of N. or from some point in the town of M., to be agreed upon between said company and the authorities of the town. It appears from the complaint that the company had adopted as a part of its line between the Wolf river and one of the points named in said proposition, the road of another company, and did not propose, for a distance of several miles, to build a *separate road of its own* between said river and either of said points. *Held*, on demurrer, that these averments show that the company has failed to perform the condition precedent on its part, and is not entitled to bonds of said town.

APPEAL from the Circuit Court for *Winnebago* County.

The plaintiff brought this action in behalf of himself and of all other owners of taxable property in the town of Menasha, similarly interested, against the chairman, supervisors and clerk of said town, and the *Wisconsin Central Railroad Company*. The relief sought was a judgment, perpetually restraining said town officers from issuing or signing any bonds of the town purporting to be issued under ch. 126, Laws of 1869, etc., and from delivering any such bonds to the president of the National Bank of Commerce of the city of New York, or any other corporation or company whatever; and also restraining the railroad company, its president and other principal officers, the secretary of state, and the town officers, from certifying to said bank, or to any person, that the condition upon which said bonds were voted, issued and deposited by the town had been performed by said company; and also restraining the company, its officers, etc., from negotiating, etc., said bonds; and for general relief. The facts upon which this relief is sought, so far as they are necessary to an understanding of the decision, are stated in the opinion.

Vol. XXXIII.—19

The defendants, except the two supervisors, demurred to the complaint upon the grounds that plaintiff had no legal capacity to sue, that there was a defect of parties both plaintiff and defendant, that no cause of action was stated, and that the court had no jurisdiction of the subject of the action.

The court overruled the demurrer, and defendants appealed.

*Finch & Felker*, for appellants argued the following among other points :. 1. Can plaintiff maintain this action as an individual tax payer, setting up merely a threatened injury to the whole community and not one in any degree peculiar to himself? 14 N. Y., 356, 371–2; 18 id., 155–163; 2 Duer, 663; 6 Met., 425–431; 28 Wis., 588. 2. In a suit of this kind a complete determination of the controversy cannot be had without the presence of the attorney general or other representative of the public; and therefore such representative must be brought in. 2 Duer, 663–669; 8 Simon, 273; R. S. ch. 10, secs. 50, 51. 3. The complaint discloses no facts showing that plaintiff is in danger of being subjected to any injury. No interference with his property is threatened. No tax upon it is levied or threatened. A debt is contemplated to be incurred by the town for the purchase of certain railroad stock. In the absence of any allegation to the contrary, it must be presumed that the stock will be worth its par value. The town will own the stock, and can dispose of it in the same manner as private individuals. Gen. Laws of 1869, ch. 126, sec. 7. Provision may exist, by a sale of the stock and from other sources, to pay the entire indebtedness arising out of this transaction, without calling on the plaintiff. 4. So far as plaintiff sues as the owner of *personal property*, he must fail, even if a tax were already levied to pay these bonds. Its collection by distress would not be restrained on the ground that the tax was illegal; the plaintiff having a complete remedy at law. *C. & N. W. R. R. v. Fort Howard*, 21 Wis., 44; *Van Cott v. Supervisors*, 18 id., 247; *Bank v. De Bolt*, 1 Ohio St., 591; *Lockwood v. City of St. Louis*, 24 Mo., 20; *Wilson v. The Mayor*, 4 E. D. Smith, 675; *S. C.*;

Lawson vs. Schnellen and others.

1 Abb. Pr. R., 4; *Chemical Bank v. The Mayor*, id., 79; *Dodd v. Hartford*, 25 Conn., 232. 5. Even if a tax to pay the bonds had been levied on plaintiff's *real property*, an injunction would not be granted to stay proceedings merely because the tax was illegal. The ground of complaint must extend to the foundation and equity of the tax, and not merely to its technical legality. *Mills v. Gleason*, 11 Wis., 470–497.; *Stokes v. Knarr*, 11 id., 389; *Ableman v. Roth*, 12 Wis., 91; *Saurhering v. R. R. Co.*, 25 id., 447–457; *Hersey v. Milwaukee*, 16 id., 185; *Secor v. Woodward*, 8 Ala., 500–767; 2 Story's Eq. Jur., § 898. 6. Counsel further argued at length that none of the averments of the complaint were sufficient to show any substantial equity in plaintiff's demand.

*Moses Hooper*, for respondent, contended that the question whether plaintiff, as a tax payer, could sue in behalf of himself and others similarly interested, had already been determined by this court (*Whiting v. R. R. Co.*, 25 Wis., 167; *Peck v. School District*, 21 id., 520, 523); that there is no other remedy, plain, practicable or superior to that here resorted to; that this one is not open to any solid objection; that the law in Indiana, Iowa, Connecticut, Rhode Island and New Jersey is the same as in this state (*Board of Comm'rs v. McCarty*, 27 Ind., 475; *New London v. Brainard*, 22 Conn., 586; *Webster v. Harwinton*, 32 id., 131; *Terrett v. Sharon*, 34 id., 105; *Lane v. Schomp*, 20 N. J. Eq., 82; *Fiske v. Hazard*, 7 R. I., 438; *Sweatt v. Faville*, 23 Iowa, 312, 328); and that such was at least the former doctrine in New York (*Christopher v. The Mayor*, 13 Barb., 567; *Milhau v. Sharpe*, 15 id., 193; *Stuyvesant v. Pearsall*, id., 244; *Pullman v. New York*, 49 id., 57; High on Inj., § 783); while the later cases of *Doolittle v. Broome Co.*, 18 N. Y., 155, and *Roosevelt v. Draper*, 23 id., 318, in which the relief by injunction was denied, are distinguishable. Counsel further argued at length that the complaint set forth several substantial and sufficient grounds for the relief sought.

DIXON, C. J.   The cases of *Whitiny v. Railroad Co.*, 25 Wis., 167, and *Judd v. Fox Lake*, 28 Wis., 583, must be taken to have settled the law of this state, that injunction is the proper remedy to stay and prevent the execution and delivery by its officers of the negotiable bonds or other commercial obligations of a town or municipal corporation, when the case made by the plaintiff, being a tax payer of the town or municipality and a party likely to suffer pecuniary loss, shows that such officers threaten or are about to execute and put in circulation such bonds or other negotiable paper of the corporation in contravention of the authority given by law for that purpose, or in violation of the trust reposed in them by the legislature, or by the taxable inhabitants of the town, or other municipality, whose officers they may be.   The case of *Judd v. Fox Lake* approves, and it was so intended by the court at the time, the jurisdiction in this respect which was silently exercised in *Whitney v. Railroad Co.*, and which jurisdiction had also received the express approbation of the court in *Phillips v. Albany*, 28 Wis., 340, 353.   The reason for distinguishing cases of this kind from others in which it has been held that injunction will not be granted to restrain the proceedings of municipal officers, and for maintaining the jurisdiction, sufficiently appears from what is said in *Judd v. Fox Lake.*   The officers of the town appointed to execute and deliver the bonds under these special acts of the legislature granting authority to the town for that purpose, are but the agents of the tax-payers or inhabitants within the town, constituting the body politic and corporate thereof ; but whether such agency is general or special is a point of some difficulty, and one not clearly settled by the decisions of the state courts. This court held, in *Veeder v. Lima*, 19 Wis., 280, 291, that such agency was special, and the same proposition has been maintained in several state decisions cited in that opinion.   On the other hand, the reasoning and decision of the supreme court of New Hampshire, where a somewhat similar question arose in *Blackman v. Charlestown*, 42 N. H., 125, also cited in *Veeder v.*

*Lima*, would tend to sustain the position that the agency is general, rather than special.    The nature of the agency, whether general or special, becomes most important in determining the question whether any defense could be successfully made against payment of the bonds in the hands of a *bona fide* holder for value, on the ground that the officers, when they made and delivered the same, had transcended or failed in the performance of their duties towards the town, or had departed from the instructions lawfully given or the terms and conditions lawfully imposed by the voters, and in accordance with which such making and delivery only had been authorized.    If the agency is general, and if there is no public record of the proceedings of the voters or the officers, by which to affect purchasers of the bonds with notice of the violation of duty or departure from the terms and conditions of their authority by the officers, then it would follow that no defense could be interposed by the town so as to prevent a recovery upon the bonds in a suit brought by a *bona fide* holder for value, however much the officers may have overstepped the bounds set to their authority, or have proceeded in disregard of the terms and conditions lawfully prescribed by the voters.    If, on the contrary, the agency is special, then a compliance with all the substantial conditions upon which the power is granted will be required in order to give validity to the bonds in the possession of any person, whether he be an innocent holder for value or not.    Noncompliance with any of the material conditions may then be shown to defeat a recovery, in whosesoever hands the bonds may be.    But, without speculating further upon the nature of such agency, it is enough for our present purposes to know that the federal courts hold the broad doctrine in all cases, that such agency is general, and that while holding that, they hold also, in addition, that the purchaser of the bonds is not to be affected with notice by any public record which it is in the power of the state legislature to prescribe.    A recent federal decision upon this subject is that in *Grand Chute v. Winegar*, 15 Wallace,

355, where the court had under consideration an act of the legislature of this state (ch. 40, Private Laws of 1854), granting special authority to certain towns to subscribe to the capital stock of a plankroad company   The act differed in no material respect from that considered by this court in *Veeder v. Lima, supra,* and the facts presented were very much.the same. It seems almost needless to remark that the federal court came to conclusions the very opposite of those reached by this court in that and other similar cases, especially upon the questions relating to the meaning and proper construction of the acts of the legislature of this state, and of our own state constitution. Such has been the uniform course of federal decision whenever and wherever a case of this particular kind has arisen in those courts.   See especially *Olcott v. The Supervisors,* 16 Wallace, 678.   Such being the settled rule of decision in the federal courts, in which actions upon the bonds are certain to be instituted, it can remain no longer a question whether the restraining power of equity should be exercised to prevent abuses of, and deviations from, the special power conferred upon the municipal officers in the execution and delivery of such negotiable bonds.   If the tax-payers and real parties in interest have not the remedy by injunction, then there exists none whatever for the wrong.   It becomes an evil wholly without means of prevention or redress by any process known to the law.   This court is therefore of opinion that the writ of injunction will issue in such a case, not only to give effect to the safeguards and restraints imposed by the legislature or the constitution of the state, but also to enforce the terms and conditions prescribed by the voters of the town.

The conclusion that the voters or inhabitants of the town are the contracting party upon one side, and the railroad company upon the other, and that the supervisors, or, as in this case, the chairman of the board of supervisors of the town and the town clerk, are the mere agents of the former, is settled by the decision of this court in *Rochester v. Alfred Bank,* 13 Wis., 432,

439, and confirmed by that of the court of appeals in the recent case of *The People ex rel., etc., v. Bacheller, Supervisor*, 8 Albany Law Journal, 120.

And in *Phillips v. Albany, supra*, speaking of a case where, without express authority given, or requirement made by the legislature, a special agreement had been entered into, or proposition submitted by the railroad company, which had been ratified by the voters, this court said : "If the proceeding here was to restrain the officers or authorities of the town from violating the terms of the agreement, or executing and delivering the bonds contrary to its provisions, and that fact were shown, we should have little difficulty in upholding the injunction."

The act of the legislature here in question expressly provides for the issue of the bonds "upon such terms and conditions as shall be agreed upon by and between the town and the railroad company." The terms and conditions are to be contained in "a definite proposition in writing, signed by the president or secretary of said railroad company, and sealed with the common seal of said company." Upon receipt of such proposition, the clerk of the town is to give notice of an election to be held by the legal voters of the town, which notice shall contain a full statement of the proposition, and at which election the voters are to deposit a ballot upon which shall be written or printed the words, "for the railroad proposition," or the words, "against the railroad proposition." The act furthermore provides that, in case of a majority of votes "for the railroad proposition," it shall be the duty of the proper officers to cause the bonds, so voted, to be issued and delivered to the railroad company, "*on performance by said company of the terms and conditions contained in such railroad proposition.*" Laws of 1869, ch. 126, secs. 1, 2, 4.

It appears from the complaint in this action, that the requisite proposition was made, an election held, and a majority vote obtained in favor of the proposition. Of the conditions contained in the proposition, and which were in their nature strictly precedent, and to be performed by the company before delivery

of the bonds to it by the chairman and clerk, we shall notice only one, which the complaint shows to be still unperformed by the company, and in violation of which it is charged that the chairman and clerk threaten and are about to deliver the bonds. We refer to that condition mentioned in the first, fourth and fifth subdivisions of the propositions, by which the railroad company, according to the first and fourth, bound itself to the construction and completion of a single track railroad from block 3, in Jones' plat, in the town of Neenah, on Doty's island, to the Wolf river; or, according to the fifth subdivision, and upon the contingency happening as therein provided for, from such place in the town of Menasha as might be agreed upon between the company and the authorities of the town, also to the Wolf river. The location and building of the road from block 3, was contingent upon the town of Neenah subscribing $50,000 to the capital stock of the company. If Neenah should not so subscribe, then if Menasha by individual subscription raised the additional fifty thousand dollars, which it was at that time expected would be subscribed by Neenah, in that case the depot was to be located and road constructed from such place in the town of Menasha as should be agreed upon between the town authorities and the company. The intention of the company is not, perhaps, in all respects, very fully and clearly expressed in the proposition; but this much, we think, must be well understood from it, namely: that the $50,000 subscription by Menasha was not to take effect, nor the bonds to be delivered, until the road was built from one point or the other named in the proposition. It can not be supposed that Menasha was to subscribe for the stock and deliver its bonds without the advantages of a railroad constructed and to be put in operation to one point or the other. Such must have been the understanding of the voters, and such doubtless the intention of the railroad company. The complaint does not inform us whether the proposition made to Neenah was accepted by the voters or not, nor does it inform us whether the $50,000 was furnished

Lawson vs. Schnellen and others.

by individual subscription in Menasha. It is possible that it may in these particulars be looked upon as faulty and imperfect. The complaint does, however, show that the company has not built and completed its road from either of the points indicated in the proposition, which must be regarded as a sufficient allegation of the nonperformance of the condition upon which the bonds were to be delivered to the company. The averment of the complaint in this respect is as follows: "Because, as the fact is, the said Wisconsin Central Railroad Company have adopted as part of their line, proposed to be built by them in said proposition of May 10, 1870, the line of railroad of the Chicago & Northwestern Railway Company, and do not propose, for the extent of some miles, to build, have or maintain, between the points specified in said proposition, any independent line of road, but to adopt the line and use, for that distance, the road track of the Northwestern Railway Company."

It is understood from the arguments of counsel at the bar, but not from any allegation to that effect found in the complaint, that the railroad company defendant has procured the license or permission of the Northwestern Railway Company to run over its track for the distance of two or three miles into the town of Menasha. The terms of this license or lease, and whether for a long or short period of time, has not been made known to us, nor does it seem material that we should know. It is enough that one of the conditions of the proposition submitted by the company to the voters plainly required the company to construct an independent line of road, of which it should be the owner, from one or the other of the points named in the proposition, to the Wolf river, and that it is averred that such condition has not been complied with by the company. Counsel for the company urges that the advantages to the town are and will continue to be the same as if an independent line of road had been built. This court can not say that those things are or will be so; but if it could, it has no power to dispense with the performance of the condition. Courts can not place

themselves in the position of either of the parties to a contract, and say that this or that stipulation or condition shall be abandoned or dispensed with, because they may think it is or will be of little or no value to such party. It is sufficient that the parties have so agreed, and the duty of the court is to give effect to their agreement. It is easy to perceive, nevertheless, how the building of an independent line of road, to be owned by the company in which the town takes its stock, might be of the very greatest benefit to the town and its inhabitants, and why the voters should stipulate for and might reasonably and justly insist upon its being built. Aside from the enhanced value of the road itself, and of the stock, it might afford very great additional facilities over those furnished by a road already built and in operation. The lease may be but for a short time, or subject to termination or forfeiture, when all direct advantage of the road would be lost. It may be subject to conditions which are unjust and oppressive towards the inhabitants, and thus they become the losers. The agreement is for a road to be constructed and owned by the company, and of which it shall have the full, free, absolute and permanent use and control, and the inhabitants or tax-payers of the town are entitled to performance of such agreement before their bonds shall be delivered to the company. So far as this court is at present advised, this appears to be one of the most essential conditions of the contract between the railroad company and the town, and one which is yet unperformed on the part of the company; and for this reason we think the complaint states a good cause of action for an injunction to restrain the transfer or delivery of the bonds to the company, its officers or agents, and that the demurrer of the defendants was properly overruled.

*By the Court.* — Order affirmed.