STATE OF MINNESOTA *ex rel.* Minneapolis & Northwestern Railroad Company *vs.* CITY OF MINNEAPOLIS.

32 501
e86 393

December 2, 1884.

**Municipal Aid to Railway—Condition Precedent.**—The city of Minneapolis, in pursuance of the provision of chapter 182, Sp. Laws 1879, voted to issue its bonds to the relator to aid the building of its three several lines of road from said city into the country northward and westward, and lying between the Hastings & Dakota and St. Paul & Pacific railroads, and between the several lines or branches of the latter road. Such bonds to be delivered at the rate of $1,000 per mile, when the track was laid and the *cars running* on each section of not less than 10 consecutive miles: "*Provided, the eastern terminus, general offices, and headquarters of said railroad shall be at Minneapolis.*" The relator itself has never built, owned, or operated any railroad; but under its authority and its articles of incorporation the St. Paul, Minneapolis & Manitoba Railway Company has constructed 63 miles of road from the city of Minneapolis, where it connects with the main line of that company, to St. Cloud, where it connects with the St. Vincent branch of the same company. These 63 miles of road are owned and operated wholly by the St. Paul, Minneapolis & Manitoba Railway Company, as a part of their system, from their own general offices and headquarters in St. Paul. The relator company, which neither owns nor operates any railroad, has its general offices, nominally at least, in Minneapolis. *Held,* that this does not constitute a compliance with the conditions of the proviso above cited. This proviso means that the "operating" headquarters and general offices of the road, after construction, shall be established and permanently maintained in the city of Minneapolis. It is in the nature both of a condition precedent to the issue of the bonds, and also of a continuing obligation on the relator after their issue, and contemplates the *establishment* of these general offices and headquarters at Minneapolis before the bonds shall be issued, as well as the maintenance of them there afterwards.

Appeal by the relator from a judgment of the district court for Hennepin county, *Young, Lochren, and Koon*, JJ., presiding, adjudging the relator not entitled to a writ of *mandamus* to compel the respondent to issue its bonds to the amount of $63,000, pursuant to Sp. Laws 1879, c. 182.

This act after providing for the issuance, by respondent, of its bonds in aid of the relator, provides as follows, in section 8:

"Said bonds shall be issued and delivered to the said company in amounts and at the times hereinafter specified, to wit: When the track is laid and 'the cars are running on a section of not less than ten consecutive miles of said railroad, beginning at Minneapolis, on either one of the following described lines, viz: * * * *Second*, A line connecting Minneapolis with and extending into the region of country lying between the main line of the First Division of the St. Paul & Pacific railroad, and the St. Vincent extension of the St. Paul & Pacific railroad, and thence westerly and northwesterly toward the western boundary of this state, designated as the central division of said railroad * * * * ——

——"Then the bonds of said city to the amount of one thousand dollars for each mile of said section shall be delivered to said railroad company. When a second section of not less than ten miles of continuous track on either of the said divisions, connecting with the first above described section, or beginning at Minneapolis, shall have been laid, and the cars running thereon, an additional amount of bonds, equal to one thousand dollars for each additional mile of said second section, shall be delivered to said railroad company; and so on, until, upon the completion of two hundred and fifty miles of said divisions by the laying of the track and the running of the cars thereon, the whole of said two hundred and fifty thousand dollars of bonds shall be issued and delivered at the rate of one thousand dollars per mile of road so completed and in operation. * * * *

"*Provided*, the eastern terminus, general offices and headquarters of said railroad shall be at Minneapolis."

The court found that the relator had procured the right of way for its "central division," and prior to February 21, 1883, caused this division to be constructed, with cars running thereon, from Minneapolis to St. Cloud, a distance of 63 miles; that the eastern terminus of this 63 miles of railroad is at Minneapolis, and the trains operated thereon have been made up and broken up at Minneapolis.

The court also found that the relator had never built or caused to be built any portion of either of the three lines mentioned in the act

except this line of 63 miles to St. Cloud, and that this line was actually constructed by the St. Paul, Minneapolis & Manitoba Railway Company. That in July, 1880, the majority of the subscription to relator's stock (only 40 shares of which stock have ever been issued) was assigned to two persons in trust for the St. Paul, M. & M. Ry. Co., or for some of its officers, in consideration of which that company on July 13, 1880, agreed to furnish the money for, and to locate, construct and equip, with the cars running thereon, at least 100 miles (including the 63 miles in question) of relator's central and northern division. That on April 23, 1883, the relator conveyed to the St. Paul, M. & M. Ry. Co., the line in question and all its rights and franchises connected therewith.

The court also found that the eastern terminus of the line of 63 miles of railroad is near Lyndale avenue in Minneapolis, where it connects with the main line of the St. Paul, M. & M. Ry., and the northern terminus at the city of St. Cloud connects with the St. Vincent extension of the St. Paul, M. & M. Ry. (This "main line" and "St. Vincent extension" are the same lines mentioned in section 8 of the act, and at the date of the passage of the act belonged to the companies therein mentioned.) That the line with its appurtenances belongs to the St. Paul, M. & M. Ry. Co., and during its construction and ever since has been operated and managed by that company as one of its branch lines. That the relator does not possess and never has possessed any rolling stock, motive power, machinery or equipment, with which to operate the line, nor any depot, shop, offices for operating the line, depot grounds or terminal facilities of any kind in Minneapolis; that the general offices and headquarters of the relator are and have always been, nominally at least, in Minneapolis, and the general offices of the St. Paul, M. & M. Ry. Co. have always been at St. Paul, and have always been and are the headquarters and general offices for the conducting and management of the operation of the line of railroad in question.

As a conclusion of law the court held that the above-quoted proviso in section 8 had not been complied with, inasmuch as the operating headquarters of the line were not in Minneapolis, and that, for this reason, the relator was not entitled to the bonds.

*R. C. Benton* and *R. B. Galusha,* for appellant.

The relator became entitled to the bonds on completion of the line with cars running thereon. All this did and must necessarily precede the management and operation of the road thus constructed. The condition in the proviso is therefore a condition subsequent; *Finlay* v. *King,* 3 Pet. 346, 374; or, perhaps, an executory contract to be performed after and in consideration of the issue of the bonds. To hold that the maintenance of headquarters for operating the road is a condition precedent to the issue of the bonds postpones the time of issue till full performance, that is until the end of all its operations. This is in express contravention of the terms of the act, and inconsistent with its expressed purpose "to aid in the construction" of the railroad. *Chamberlain* v. *P. & H. R. Co.,* 15 Ohio St. 225, 247; *McMillan* v. *M. & L. R. Co.,* 15 B. Mon. 218; *Belfast & M. L. Ry. Co.* v. *Inhabitants of Brooks,* 60 Me. 568, 576; *Ashtabula & N. L. R. Co.* v. *Smith,* 15 Ohio St. 328; *Woonsocket U. R. Co.* v. *Sherman,* 8 R. I. 564; *Stowell* v. *Stowell,* 45 Mich. 364.

Being a condition or covenant subsequent, the right to the bonds became vested in the relator on the completion of the sections of road, and cannot be divested by breach of an executory contract or by any other acts unless such as work a forfeiture of the estate. *Chicago, Mil. & St. Paul Ry. Co.* v. *Minn. Cent. R. Co.,* 14 Fed. Rep. 525; S. C. 10 Am. & Eng. R. Cas., 234.

As a condition subsequent, there has been no breach, for it has not yet become obligatory. The issue of the bonds is a condition precedent to relator's obligation to maintain headquarters, etc., at Minneapolis.

The only way in which the proviso could be construed as a condition precedent would be to hold that the general offices and headquarters named were those of the corporation. This condition has been performed both substantially and literally. The terminus of operation as well as of construction has been maintained at Minneapolis; it is expressly found that the trains have been made up and broken up at Minneapolis. This is such a substantial compliance as has been uniformly held sufficient, in analogous cases of conditional municipal aid by bonds or subscription to stock. *Ashtabula & N. L.*

*R. Co.* v. *Smith,* 15 Ohio St. 328; *Woonsocket U. R. Co.* v. *Sherman,* 8 R. I. 564; *Warner* v. *Collender,* 20 Ohio St. 190; *Stowell* v. *Stowell,* 45 Mich. 364; *Hornback* v. *Cincinnati & Z. R. Co.,* 20 Ohio St. 81; *Jenkins* v. *Burlington & Mo. River R. Co.,* 29 Iowa, 255; *Mead* v. *Ballard,* 7 Wall. 290.

The right to the bonds was perfect in February, 1883, and could not be divested by the conveyance of the road to another corporation. This was by law within the power of the relator at the time its contract with the respondent was made, and respondent contracted in view of this power of the relator and the possibility of its exercise. *Nugent* v. *Supervisors,* 19 Wall. 241; *County of Scotland* v. *Thomas,* 94 U. S. 682.

*C. H. Benton* and *J. N. Cross,* for respondent.

MITCHELL, J.  The facts of the case sufficiently appear from the findings of the court, and from chapter 182, Sp. Laws 1879, which— more particularly section 8 of that act—constitutes the contract between the relator and the city of Minneapolis.  The principal contention is as to the effect to be given to the fourth or last proviso attached to section 8 of the act.  In construing this proviso, it is proper to consider the spirit and scope of the entire act in the light of the situation of the parties at that time.

The country north and west of Minneapolis, and north of the Hastings & Dakota railroad, was intersected by the several lines of the St. Paul, Minneapolis & Manitoba (formerly St. Paul & Pacific) Railway Company, whose headquarters and general offices were in St. Paul. The relator, whose principal place of business was designated at Minneapolis, had been organized for the purpose of building and operating a railroad, with three separate lines, from Minneapolis into the country north and west of that city : *First,* a line connecting Minneapolis with, and extending into, the region of country lying between the Hastings & Dakota railroad and the First Division of the St. Paul & Pacific (main line) railroad, and thence southerly and westerly towards the west line of the state; *second,* a line connecting Minneapolis with, and extending into, the region of country lying between the main line of the First Division of the St. Paul & Pacific railroad and the St. Vincent Extension of the St. Paul & Pacific railroad, and thence westerly and north-

erly towards the west line of the state; *third*, a line connecting Minneapolis with, and extending into, the region of country lying northerly of the St. Vincent Extension of the St. Paul & Pacific railroad, and thence north-westerly towards the north line of the state.

In order to aid in the building of this system of railroads, thus intersecting the territory north and west of the city, and which would, presumably, render the trade of that region tributary to it, the city of Minneapolis voted its bonds upon the terms and conditions specified in section 8 of the act referred to. But as the benefits to be derived from the construction of such a system of railroads were supposed to depend largely upon the manner in which they were operated, the city of Minneapolis, in order to secure more fully and certainly these benefits, attached to this section, (8,) which provides for the issue of its bonds, among others, the following proviso: "Provided, the eastern terminus, general offices, and headquarters of said *railroad* shall be at Minneapolis."

In view of the spirit and object of this act, we fully agree with the court below, that the benefit which it was intended to secure to the city of Minneapolis by this proviso was something more than having, in name and form only, an office of the relator company in that city, while the headquarters and general offices for the purpose of operating and managing the *railroad* might be established and maintained elsewhere. We think this proviso manifestly means that the "operating" headquarters and general offices of the road, after construction, should be established and permanently maintained in the city of Minneapolis. The court below was therefore, in our opinion, correct in holding that the terms and conditions of this proviso had never been complied with. Practically, the relator as a coporation exists as yet only on paper. It has never built, owned, or operated a mile of road. Plainly stated, all that has been done is that the St. Paul, Minneapolis & Manitoba Railway Company, under the authority of the charter or articles of incorporation of the relator, has built 63 miles of railroad from Minneapolis, where it connects with the main line of that company, to St. Cloud, where it connects with the St. Vincent Extension of the same company. These 63 miles of road are owned and operated by the St. Paul, Minneapolis

& Manitoba Railway Company as a part of their system, with head-quarters and general offices at St. Paul, while the relator company, which neither owns nor operates a mile of road, in name and form merely keeps a "general office" in Minneapolis.

In short, instead of securing a system of railroad lines terminating at Minneapolis, operated and managed from headquarters and general offices in that city, as contemplated by this act, in substance all that has been done is that the St. Paul, Minneapolis & Manitoba Railway Company have constructed a "loop" line from St. Cloud to Minneapolis, which they operate and manage from their own headquarters and general offices in St. Paul, the same as any other part of their line. This is not a performance of the terms of the contract. It is immaterial whether the present mode of managing and operating this road is more or less advantageous to the city of Minneapolis than that provided for in the contract. She is entitled to just what she bargained for.

It hardly needs the citation of authorities to sustain the proposition that when a municipal corporation votes its bonds to aid the building of a railroad on certain terms and conditions, it is entitled to a strict and full compliance with all these terms and conditions on the part of the railroad company before the latter is entitled to the bonds. *Lawson* v. *Schnellen*, 33 Wis. 288. But the great contention of the relator is that this proviso is not a *condition precedent* to the issue of the bonds, and hence, even if its terms and conditions have not been performed, this fact will not defeat its right to the bonds, and hence it is entitled to a writ of *mandamus* to compel their issue. If we admit the premises, we would still doubt the correctness of the conclusion. Even if this proviso be not technically and strictly a condition precedent to the issue of the bonds, yet it certainly does amount to a continuing engagement on the part of the relator, if they avail themselves of the benefit of the contract, to establish and maintain their headquarters and general offices at Minneapolis; and this engagement constitutes in part the consideration for the agreement of the city to issue and deliver its bonds. The *mandamus* asked for in this case is to compel the city to perform its part of the contract. It may be likened to a bill in equity to compel specific performance of a

private contract. In such a case it is not a writ of right. It is granted, not of course, but at the discretion of the court. We hardly think that a court would feel inclined by a writ of *mandamus*, any more than by decree in equity, to compel specific performance of a contract when it appeared that the party seeking to compel performance had himself broken his part of the contract, even although the thing omitted had not been expressly made a condition precedent to performance by the other party.

But we are of opinion, however, that this proviso is in the nature of a condition precedent to the issue of the bonds, and also of a continuing obligation on the part of the relator in case it accept them. It will be observed that by the terms of the act the bonds were to be issued for any section of 10 or more miles of railroad only when the track was laid *and the cars running thereon;* that is, no bonds could be issued for any sections of road until it was in *actual operation.* If it was to be in operation, this presupposes offices and headquarters established in and from which the business connected with the operation of the road was being conducted. Hence we think that this proviso contemplated the establishment of these "operating" headquarters and offices at Minneapolis as a condition precedent to the issue of the bonds; that where it says that these headquarters and general offices shall be at Minneapolis, it means that they shall actually be there before the bonds are issued, as well as maintained there afterwards. This view is, we think, in harmony with the spirit and intent of the whole act. It is also, in our judgment, further strengthened by the fact that, although not in expressed terms declared to be a condition precedent, yet it is attached as a proviso to the very section which authorizes the issue of the bonds, and would seem to be included among the conditions of section 8, referred to in the following section 9, which are to be complied with before the city council should direct the execution and issue of any bonds.

Judgment affirmed.