GEORGE J. McMANUS *vs.* DULUTH, CROOKSTON & NORTHERN R. Co.
*et al.*

Argued July 15, 1892.  Decided Aug. 17, 1892.

### Construction of Statutes.

A special law empowering a municipal corporation to issue its bonds
in aid of the construction of a railroad is to be strictly construed.   The
power conferred is not to be extended, nor the express conditions re-
stricted, by doubtful construction.

### Railway Aid Bonds—Conditions Precedent.

Such a law provided for a popular vote upon the proposition to issue
bonds; that the proposal to be voted on should designate *the period
within which the road must be built in order to entitle it to the benefit
of the bonds;* that the bonds when voted should be delivered "in es-
crow" to designated persons as commissioners, to be by them delivered
to the railroad company upon full and complete compliance with the
terms of the act; and that if the company should fail to comply with
such conditions it should be the duty of such commissioners to *forthwith*
return the bonds to the city council.   Such a proposal, fixing the 1st of
November as the time within which a railroad should be completed into
the city ready for operation, was submitted to the people, and the vote
was in favor of issuing the bonds.   The road was not completed before
the 15th of November.   *Held* that, by the terms of the law and of the
contract, the completion of the road by the time specified was a *condition
precedent,* and that by reason of its failure to comply therewith the rail-
road company did not become entitled to the bonds.

### Railroad Crossing—Delay in Acquiring Right of Way.

It being necessary for the railroad to cross the lands and railroad of
another company, the proper steps should have been seasonably taken to
secure the right of way; and delay in the construction, resulting from
neglect to do so, is to be attributed to the fault of the railroad company.

### Laws 1891, ch. 78, not Retroactive.

The general rule that a statute is not to have a retroactive effect, where
not clearly so intended, applied.

### Power of Commissioners under Sp. Laws 1889, ch. 205.

The statute did not give to the bond commissioners the power of de-
termining conclusively the fact as to whether the conditions upon which
the bonds were voted had been complied with.

Appeal by defendants, The Duluth, Crookston & Northern Railroad Company, William Anglim, Louis Ellington, and C. O. Christianson, from a judgment of the District Court of Polk County, *Mills*, J., entered February 8, 1892.

This action was brought by the plaintiff, George J. McManus, a resident and taxpayer of the city of Crookston, Polk County, Minnesota, against the defendants, the City of Crookston, Wm. Anglim, Louis Ellington, C. O. Christianson, O. H. Lucken, and the Duluth, Crookston & Northern Railroad Company, to restrain Anglim, Ellington, Christianson and Lucken from transferring or delivering to the railroad company the $50,000 in bonds issued to it and in their hands in escrow under the provisions of Sp. Laws 1889, ch. 205.

The case was tried by the court. Findings were filed July 17, 1891, and judgment was entered pursuant thereto on February 8, 1892, perpetually enjoining the defendants the bond commissioners, from delivering any of the bonds to the defendant railroad company, and enjoining the company from receiving them. From this judgment the railroad company and defendants Anglim, Ellington, and Christianson appealed.

*Warner, Richardson & Lawrence* and *H. Steenerson,* for appellants.

1. The court below proceeded without jurisdiction. Under Sp. Laws 1889, ch. 205, the commission had exclusive power to ascertain and determine whether substantial performance of the contract on the part of the railroad company, had been made. This power was exclusive, except in case of fraud. Nothing of this sort was found, and the decision and judgment was a mere usurpation of the unexecuted authority of the commissioners. *Trainor* v. *Worman,* 33 Minn. 484; *State* v. *Chicago, M. & St. P. Ry. Co.,* 38 Minn. 281; *Minneapolis & St. L. Ry. Co.* v. *Railroad & Warehouse Com.,* 44 Minn. 336.

2. The building and completion of the road ready for operation by or before November 1, 1889, was not a condition precedent. Time was not of the essence of the promise. In order that time may be essential from the express provision of the agreement, the intent to make it so must be most clearly, unmistakably, and unequivocally

shown by the stipulation.   The prescribing a day at or before which
an act must be done, even with a stipulation that it shall be done at
or before the day named, or within the period mentioned, does not
render the time essential with respect to such act.   Pomeroy, Cont.,
§ 392; 2 Parsons, Cont., 659; 1 Addison, Cont., 398; *People* v.
*Holden*, 82 Ill. 93; *Stavers* v. *Curling*, 3 Bing. (N. C.) 355.   The
language of Sp. Laws 1889, ch. 205, is not such as to warrant the
construction that time was of the essence.   The statute does not so
state in *totidem verbis*, and the intent will not be found unless it
clearly and unmistakably appears.   Courts are disinclined to con-
strue the stipulations of a contract as conditions precedent, unless
compelled by the language of the contract plainly expressed.   *Front
St. M. & O. Ry. Co.* v. *Butler*, 50 Cal. 574; *Kansas City, St. J. & C.
B. Ry. Co.* v. *Alderman*, 47 Mo. 349; *Chicago, K. & W. Ry. Co.* v.
*Makepeace*, 44 Kan. 676; *Homan* v. *Steele*, 18 Neb. 652; *Manches-
ter & K. Ry. Co.* v. *Keene*, 62 N. H. 81; *Ogden* v. *Kirby*, 79 Ill. 555.
The statute said: "Such petition shall state the *period* within which
said road must be built into Crookston, in order to entitle said rail-
road to the benefit of said bonds."   The word *must* does not always
import necessity.   *Bornmann* v. *Tooke*, 1 Camp. 377.   This court
has several times held that the term *must* was not imperative.   *Vogle*
v. *Grace*, 5 Minn. 294, (Gil. 232;) *Merrill* v. *Shaw*, 5 Minn. 148,
(Gil. 113;) *State* v. *Gut*, 13 Minn. 341, (Gil. 315;) *State* v. *Perry*,
28 Minn. 455.   There is no other language in the act, or in the
promise of the railroad company to complete the road by or before
the date named, that will warrant the construction that the comple-
tion by that date was a condition precedent to the delivery of the
bonds.

Unless the nonperformance alleged in breach of the contract goes
to the whole root and consideration of it, the covenant broken is not
to be regarded as a condition precedent, but as a distinct covenant
for the breach of which the party injured may be compensated in
damages.   *Boone* v. *Eyre*, 1 H. Black. 255; *Davidson* v. *Gwynne*, 12
East, 381; *Stavers* v. *Curling*, 3 Bing. N. C. 355; *Franklyn* v. *Mil-
ler*, 4 Ad. & E. 605; *Newson* v. *Smythies*, 3 H. & N. 840.

Whether a covenant is a condition precedent or an independent

covenant must certainly depend upon the facts of each case, rather than upon the strict construction of the language, except where the parties by express agreement have determined otherwise. *White* v. *Beeton,* 7 H. & N. 42; *Pust* v. *Dowie,* 5 B. & S. 20; Holme's Common Law, 336.

In the cases relied on by respondent, the contract contains language that is most clear and unequivocal and sufficient to satisfy the rule of construction laid down in the authorities we have cited. *City of Winona* v. *Minnesota Ry. Const. Co.,* 27 Minn. 415; *Hodgman* v. *Chicago & St. P. Ry. Co.,* 20 Minn. 48; 23 Minn. 153; *State* v. *Town of Lime,* 23 Minn. 521; *Bohn Mfg. Co.* v. *Lewis,* 45 Minn. 164; *Memphis, K. & C. Ry. Co.* v. *Thompson,* 24 Kan. 170; *Portland & O. R. Co.* v. *Inhabitants of Hartford,* 58 Me. 23. In each of these cases, the element of time was made the subject of a separate, specific provision in such terms as to leave no doubt of the intention of the parties to make time of the essence.

3. It was found that the road was completed on November 9, 1889, except for the gap of one hundred and ninety-one feet at the crossing, and it was found that everything promised, including said crossing, was actually complete November 14, 1889. Here was only a trifling default, such as does not warrant a court of equity in decreeing a forfeiture of the entire compensation for the work done. The doctrine of substantial performance applies. *Leeds* v. *Little,* 42 Minn. 414; *Elliott* v. *Caldwell,* 43 Minn. 357; *Nolan* v. *Whitney,* 88 N. Y. 648.

4. Laws 1891, ch. 78, is remedial, and should be liberally construed to effectuate the intent. It is so worded as to be retroactive. *Ely* v. *Holton,* 15 N. Y. 595; *Holcombe* v. *Tracy,* 2 Minn. 241; *Burwell* v. *Tullis,* 12 Minn. 572, (Gil. 486;) *Gaston* v. *Merriam,* 33 Minn. 271.

It is constitutional as applied to the period in this case. *Curryer* v. *Merrill,* 25 Minn. 1; *New Orleans* v. *Clark,* 95 U. S. 644; *Memphis* v. *Brown,* 97 U. S. 300; *Wistar* v. *Foster,* 46 Minn. 484; *Carter* v. *Cambridge & B. Bridge Proprietors,* 104 Mass. 236; *Davidson* v. *Comrs. of Ramsey Co.,* 18 Minn. 482, (Gil. 432;) *Guilder* v. *Dayton,* 22 Minn. 366; Cooley, Const. Lim., 381.

*Davis, Kellogg & Severance*, for respondent.

1. Under the act of the Legislature, building the railroad ready for operation by or before November 1, 1889, was a condition precedent to obtaining the bonds. *Memphis, K. & C. Ry. Co.* v. *Thompson*, 24 Kan. 174; *State* v. *City of Minneapolis*, 32 Minn. 501; *Jones* v. *United States*, 96 U. S. 24; *Phillips, etc., Const. Co.* v. *Seymour*, 91 U. S. 646; *Eddy* v. *People*, 127 Ill. 428; *Parker* v. *Thomas*, 19 Ind. 213; *Bohn Mfg. Co.* v. *Lewis*, 45 Minn. 164; *Steele* v. *Bond*, 32 Minn. 14. The word *must*, used in the act, is imperative. *Eaton* v. *Alger*, 57 Barb. 179; *Merrill* v. *Shaw*, 5 Minn. 148, (Gil. 113.)

2. Building the road by or before November 1, 1889, being a condition precedent to receiving the bonds, it is necessary that there should be a strict and full compliance. This condition not having been complied with, the injunction was properly granted. *State* v. *Babcock*, 25 Neb. 503; *State* v. *Roggen*, 22 Neb. 118; *Cowdrey* v. *Town of Caneadea*, 16 Fed. Rep. 532; *Rich* v. *Mentz*, 134 U. S. 640; *Hill* v. *Memphis*, 134 U. S. 198; *Falconer* v. *Buffalo & J. R. Co.*, 69 N. Y. 491; *People* v. *Hutton*, 18 Hun, 116; *Essex County R. Co.* v. *Town of Lunenburgh*, 49 Vt. 143; *Packard* v. *Board of County Commrs.*, 2 Colo. 347; *Parsons* v. *Tilden*, 59 N. Y. 639; *People* v. *Waynesville*, 88 Ill. 469; *Hodgman* v. *Chicago & St. P. Ry. Co.*, 20 Minn. 48, (Gil. 36;) *Winona* v. *Minnesota Ry. Const. Co.*, 27 Minn. 415. The findings clearly show that the condition was not complied with, even substantially.

3. The decision of the bond commissioners is not final. No such extraordinary powers are conferred by the act. *Harrington* v. *Town of Plainview*, 27 Minn. 224; *Chambers County* v. *Clews*, 21 Wall. 317.

4. The fact that the defendant company was enjoined from crossing the tracks of the Manitoba Company, did not relieve defendant from complying with the condition. Laws 1891, ch. 78, is not retroactive in effect. Endlich, Interp. Stat. § 271. *Kerlinger* v. *Barnes*, 14 Minn. 526, (Gil. 398;) *Edmundson* v. *Wragg*, 104 Pa. St. 500. To give the act that effect would make it unconstitutional. *Coe* v. *Caledonia & Miss. Ry. Co.*, 27 Minn. 197; *Portland & Oxford Cent. Ry. Co.* v. *Inhabitants, etc., of Hartford*, 58 Me. 23.

DICKINSON, J. In the year 1889, pursuant to the provisions of Sp. Laws 1889, ch. 205, bonds of the city of Crookston were executed and delivered to certain commissioners named in said act (who are defendants in this action) to aid in the construction of a line of railroad from a point on the line of the Duluth & Manitoba Railroad into the city of Crookston. This action was prosecuted to restrain the commissioners from delivering the bonds to the defendant railroad company, on the ground that the conditions upon which such bonds were to be delivered had not been complied with. The court, having tried the cause, and having found that the conditions had not been complied with, directed judgment for the plaintiff as prayed. The defendants, other than the city of Crookston, appeal from the judgment.

For the purposes of this appeal, the case to be considered is presented in the pleadings and the findings of the court.

We will here refer briefly to those provisions of the special law which bear particularly upon the principal point to be decided.

The first section empowers the city to issue bonds for the purpose of aiding in the construction of any railroad thereafter to be built into the city.

The third section provides that proceedings for the issuance of bonds shall be commenced by a petition of at least one hundred resident freeholders, addressed to the city council, for the calling of an election to vote upon the question of the issuance of such bonds. The petition is evidently intended to embody the proposition upon which the vote is to be taken. It is required to designate the company or corporation and the line of railroad in aid of which it is proposed to issue bonds; the amount of bonds to be issued, with other particulars; "*and also the period within which said road must be built into said Crookston, in order to entitle said railroad to the benefit of said bonds.*" The act further provides for the appointment, upon such petition, of a day for election, when a vote is to be taken on the question of issuing such bonds. In case the majority vote is in favor of the bonds, they are to be prepared "and issued and delivered in escrow" to the persons named, who by the act are appointed commissioners to receive, hold, and "deliver such bonds to the railroad

entitled thereto *upon full and complete compliance with the terms of this act."* It is declared that the commissioners shall not deliver such bonds "until the line of railroad for which such bonds have been issued shall have been built into said city of Crookston, and until the same shall have been made ready for complete operation;" and, further, that *"if such company or corporation shall fail to comply with such conditions, upon such failure it shall be the duty of such commissioners to forthwith return, and they shall return, such bonds to the city council of said city."*

In the latter part of April, 1889, this appellant, the Duluth, Crookston & Northern Railroad Company, made a formal proposal in writing to the city, to the effect that if the city would, pursuant to the special law, vote and agree to issue, and should issue, its bonds in a specified amount to aid the railroad in the construction of its tracks, "said railroad company hereby agrees *to build and complete ready for operation, by or before November 1, 1889,* a standard gauge railroad from some point on the line of the Duluth & Manitoba Railroad between [places here specified,] *to and into the city of Crookston."* Thereupon a petition was presented to the city council, signed by the requisite number of freeholders, embodying this proposal of the railroad company, and requesting the appointment of a day for an election for the purpose of voting upon the same. This was done, and the bonds voted and placed in the hands of the commissioners, as before stated.

The railroad, by the construction of which the bonds are claimed to have been earned, is twenty-three miles in length, extending from a place called Fertile, on the line of the Northern Pacific Railroad, northward to the city of Crookston. In its course from Fertile towards the city of Crookston, and at a point about two and a half miles southeast of that city, it crosses the line of a branch of the St. Paul, Minneapolis & Manitoba Railway Company. The latter corporation owns in fee the land over which this branch road is located, the width of the track so owned being, at the place of crossing, one hundred and ninety-one feet. It does not appear when the work of construction by the defendant was commenced. But on the 23d of October, 1889, the St. Paul, Minneapolis & Manitoba Railway

Company commenced an action to enjoin the crossing over its branch road, and procured a temporary injunction, which was afterwards dissolved; but from the order of dissolution an appeal was taken, a bond being given to stay proceedings.

Not until the 2d day of November, 1889, did this defendant railroad company institute proceedings by petition to the district court to secure the right to cross with its track the right of way and railroad of the other company, nor did it acquire any right to cross until the 13th of that month, when hearing was had on the petition, and commissioners were appointed to assess damages. The road was not constructed across the other road until on or about the 15th of November. From that time on the road was successfully and safely operated, and has since that time been fully completed.

The court found that the appellant company did not build and complete its road by November 1, 1889, as required by the provisions of the special law and the proposition and petition upon which the bonds were voted, and specifies the following, among other particulars, (aside from the neglect already referred to as to the crossing of the other railroad,) in respect to which it failed to do what was required:

It is necessary to the completion of a railroad, and for its safe operation, that it be surfaced, filling in and tamping the dirt between the ties, leveling the ties; that the track be "lined up," ties spiked, and fish plates (connecting the rails) bolted. This is a part of the construction, and is usually done as part of the track laying. Prior to November 1 the track was all laid south of the railroad crossing, but for several miles it was not surfaced at all, many ties were unspiked, and fish plates not bolted. The road was in a similar condition between the railroad crossing and the city, there being some other defects also, which need not be particularly referred to. In brief it may be said, from the findings of the court, that the road was not substantially completed by the 1st of November, nor was it so far completed that it could be used until the 15th of that month.

What was the effect, as respects the right of the railroad company to receive the bonds, of its neglect to construct and complete the

road by November 1, the time specified within which it was to be done?

This is a question as to the construction and import of the special law and of the contract into which it entered. It cannot be doubted that if the language employed is to be construed as expressing the intention that the right to the bonds should depend upon the construction of the road by the time indicated, that being made a condition precedent, the railroad company never earned or became entitled to the bonds, because it failed to comply with that requirement. We entertain no doubt that such a construction must be given to the law and contract. We have distinguished by italics some of the provisions, both in the statute and in the proposal upon which the bonds were voted, which are deemed especially significant of the intention of the legislature, and of those who may be deemed to stand in the relation of contracting parties.

While the provisions of the special act constituted a part of the proposal of the railroad company, and of the petition upon which the vote was taken, it was more than a mere term or element in a contract. It was a *law* controlling the action of the city. The municipality had only such power as was conferred by this act to issue bonds in aid of this undertaking. Whatever conditions the law imposed, relating to the exercise of this power, must be complied with. The power conferred by the legislature is not to be extended, nor the expressed conditions restricted, by doubtful construction. Dill. Mun. Corp. 90, 91.

The period for construction, under the act referred to, cannot be regarded as unessential, and as not intended to be strictly complied with, without disregarding language, the plain, natural import of which is to the contrary, or at least without a free, liberal construction in favor of those claiming under the power, contrary to the rule of construction in such cases. In the significant language which we have recited there is little room for construction or for doubt as to the meaning. "*The period within which said road must be built,* * * * *in order to entitle said railroad to the benefit of the bonds,*" was required to be and was stated in the petition or proposal upon

which the people voted. It was required to be, and was, one of the conditions of the contract thus entered into. The ordinary, natural import of the language is that "*in order to entitle said railroad company*" to the bonds voted it "*must*" construct the road within the period of time stated. Further provisions of the law, above recited, make even more clear the correctness of this construction. As has just been said, this provision as to the time for construction was certainly one of the conditions or terms upon which the bonds were to be, and were, voted. It is one of the "conditions" afterwards referred to in the act, where it is said that if the company shall "fail to comply with such conditions" it shall be the duty of the commissioners to "*forthwith*" return the bonds to the city council, which is as much as to say that they are not to be delivered to the railroad company. It may be added that the proposal of the railroad company, which was incorporated in the petition for the election, and upon which the bonds were voted, was "to build and complete ready for operation, by or before November 1, 1889."    *    *    *

In support of the conclusion that the provision in the law and in the contract, as to the time within which the road should be constructed, was in the nature of a condition precedent, and that by reason of its failure to comply with that requirement the railroad is not entitled to the bonds, may be cited *Bohn Mfg. Co.* v. *Lewis*, 45 Minn. 164, (47 N. W. Rep. 652;) *Winona* v. *Minnesota Ry. Const. Co.*, 27 Minn. 415, (6 N. W. Rep. 795, and 8 N. W. Rep. 148;) *Hodgman* v. *Chicago & St. P. Ry. Co.*, 20 Minn. 48, (Gil. 36;) *Memphis, K. & C. Ry. Co.* v. *Thompson*, 24 Kan. 170; *Falconer* v. *Buffalo & J. R. Co.*, 69 N. Y. 491; *Portland & O. C. R. Co.* v. *Inhabitants, etc., of Hartford*, 58 Me. 23; *Eddy* v. *People*, 127 Ill. 428, (20 N. E. Rep. 83.)

Nor in such a case will equity afford relief for the failure to perform the prescribed condition upon which, by the law and by the terms of the contract, the right to the bonds had been made to depend. *Steele* v. *Bond*, 32 Minn. 14, (18 N. W. Rep. 830;) *Memphis, K. & C. Ry. Co.* v. *Thompson, supra.* The case is distinguishable from those of which *Leeds* v. *Little*, 42 Minn. 414, (44 N. W. Rep. 309,) is an example, where the thing to be done under a contract by the party whose default is alleged consists in the bestowal of labor

and material in the improvement of the property of the other party, the whole benefit of which accrues to the latter, and all of which is a complete loss to the former if he is denied any recovery for what he has done. No such case is before us. This railroad never became the property of the city of Crookston. The city had no legal interest in it and could have none, although it was probably expected to be of some benefit to the city. The railroad company has and will enjoy the full fruits of the expenditure it has made. It is simply the case of a *bonus* authorized and agreed to be given to a railroad company upon a specified condition only, which condition was not complied with.

The difficulty and delay which the appellant corporation may have experienced in effecting a crossing of the other railroad does not help its case, even though diligence on its part would have availed as against the failure to perform the condition precedent, a question which we need not consider. The appellant did not institute legal proceedings to secure the right to cross the lands and track of the other railroad until after the expiration of the time within which it was to have completed its road, and no sufficient excuse for the delay is shown. The time for the completion of the road was fixed in accordance with the proposal of the appellant. If it was too short, it cannot complain. But it does not appear that it was too short, or that it was impracticable to construct the road within the period thus designated. We do not know when the work was commenced nor what time was necessary to do the work. That the other railroad company secured a temporary injunction restraining the appellant from *unlawfully* constructing its line over the lands and road of the former, before any steps had been taken to secure the legal right to do so, can be of no avail to the appellant.

But it is said that the bonds, which were voted in the spring of the year, and should have been executed and placed in the hands of the appointed commissioners, were not delivered to them until October, (it does not appear that such was the fact;) and it is argued that the company should have had time for building the road after the bonds were so delivered; that the delay in delivering the bonds should have the effect to extend the period designated for

construction. This is sufficiently answered by saying that it does not appear that the appellant delayed undertaking the work of construction because of the delay in preparing the bonds, or that the failure to get through in time had any relation to that fact. In no event was the railroad company to receive the bonds until the work should be completed. That the bonds were to be issued was determined by the vote of the people. After that it was of little consequence that they were not speedily prepared and deposited with the commissioners. But, aside from this, the defense was not put upon any such ground. The defendants formally admitted that the bonds were "duly" issued and delivered to the commissioners.

The amendment (Laws 1891, ch. 78) of the statute relating to writs of injunction, adding the provision that "the period during which performance of an act is stayed by injunction forms no part of the time for performance of such act," cannot be construed as having a retroactive operation, so as to revive and make absolute an originally contingent liability of the city, which had been completely discharged more than a year prior to the enactment of the law referred to. The general rule against giving retroactive effect to statutes would forbid such an application of this law, even though it be conceded that the legislature had constitutional power to require the city to issue its bonds, which it was not by its contract legally bound to do.

The appellants cannot be sustained in the position that the court had no jurisdiction to determine whether the conditions, the performance of which would have entitled the company to the bonds, had been complied with, and that this was left solely to the decision of the bond commissioners. There is nothing in the law justifying such a construction. The law and the contract made the right to the bonds to depend upon the *fact* of compliance with the prescribed conditions. It does not make the commissioners arbiters to determine controversies which may arise as to such fact, nor does it deny to the interested parties the right to have their controversies adjudicated in the ordinary way.

Judgment affirmed.

(Opinion published 52 N. W. Rep. 980.)