.TOWN OF BIRCH COOLEY v. FIRST NATIONAL BANK OF MINNEAPOLIS.[1]

June 13, 1902.

Nos. 12,943—(134).

**Railway-Aid Bonds.**

Where municipal bonds are voted to a railroad company in aid of the construction of its road, it is not entitled to them, unless there is a full performance of all of the conditions precedent upon which they ,were to be delivered.

**Same—Performance of Agreement.**

The plaintiff town voted to deliver its bonds to a railway company upon the condition that it would, within a time limited, complete its road, ready for the passage of cars thereon, to, into, and through the town. It so completed its road into the town, and to a point within five hundred thirty feet from the outward boundary thereof, where it stopped at a ledge of granite, and did not continue the road out of the town until eighteen months after the expiration of the time limited. *Held* not a compliance with the condition, within the meaning of the rule.

Action in the district court for Hennepin county to recover possession of certain railway-aid bonds issued by plaintiff. Defendant disclaimed interest in the bonds and deposited them with the clerk of the district court. Thereupon the Minneapolis & St. Louis Railroad Company filed a complaint of intervention, claiming to be the owner of the bonds and entitled to their possession. The case was tried before Harrison, J., who directed a verdict in favor of the intervenor. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Reversed, and judgment ordered for plaintiff.

[1] Reported in 90 N. W. 789.

86 M.—25

*John Lind* and *A. Ueland,* for appellant.
*Albert E. Clarke,* for respondent.

START, C. J.

This action was brought to recover from the defendant bank the possession of eleven railway-aid bonds, each being for the sum of $500, and bearing interest payable semiannually at the rate of seven per cent. per annum from July 1, 1881.

The defendant by its answer admitted that the bonds were in its possession, but disclaimed any interest therein, and alleged that the Minneapolis & St. Louis Railroad Company was the only party to the knowledge of the defendant making any claim thereto.

Thereupon the defendant deposited the bonds with the clerk of the court, pursuant to Laws 1895, c. 329, and the railroad company intervened in the action. It alleged in its complaint that it was the owner of and entitled to the possession of the bonds, by virtue of a contract between its predecessor in interest, the Minneapolis & St. Louis Railway Company, and the plaintiff, whereby it was agreed that, if the former would build its railway into and through the plaintiff town according to the terms of the contract, it should be entitled to the bonds in question, and, further, that it in due time performed all of the terms of the contract on its part. The reply put in issue these allegations of the intervenor's complaint. On the trial, and at the close of the evidence, the plaintiff moved the court to direct the jury to return a verdict for it for the possession of the bonds. This was denied, to which ruling it duly excepted. Thereupon the court, at the request of the intervenor, directed the jury to return a verdict for it to the effect that it was the owner of the bonds, which were of the value of $13,200, and entitled to the possession thereof. The plaintiff also excepted to this ruling, and appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial.

The evidence upon all material points was practically undisputed, and it established these facts: On March 8, 1881, the Minneapolis & St. Louis Railway Company, hereafter designated as the "Railway Company," submitted, pursuant to G. S. 1894, §§

2771–2783 (G. S. 1878, c. 34, §§ 92–97), a written proposition to the town of Birch Cooley, the plaintiff herein, to construct and fully complete a line of railway from a point at or near Hopkins station, in the county of Hennepin, in a westerly direction, to, into, and through the town, and have such line ready for the passage of cars to and through the town on or before January 1, 1883. The town, on its part, for the purpose of aiding the construction of such line, was to issue the bonds here in question, payable to the railway company, or bearer, and place them in escrow with the president of the defendant bank, as trustee, to be delivered by the trustee to the railway company upon compliance by it with the conditions of the proposition on its part

"And the completion of its said line of railway, ready for the passage of cars, as aforesaid, through said town of Birch Cooley."

This proposition was duly submitted to the legal voters of the town, and a majority of them voted to accept the proposition and to issue the bonds as proposed, and the bonds were accordingly duly issued on behalf of the town and placed in the hands of the trustee, to be delivered to the railway company if the conditions upon which they were voted were complied with by it. The bonds were never delivered by the trustee, and upon his death they came into the possession of the defendant bank.

The railroad was built into the town from the east, and ran in a northwesterly direction to a point about three-quarters of a mile from the western boundary of the town, and then deflected toward the south boundary thereof, the Minnesota river. In October, 1882, the railroad was completed to a point five hundred thirty feet from the middle of the river, and four hundred fifty feet from the river bank, where it ended; and it was not further extended until July, 1884, when it was constructed and equipped to, across, and over the river. The topography of the ground from the point where the road ended in 1882 to the river was a solid granite ledge, which lay across the line of the railway between the end of the completed portion thereof and the river, necessitating a cut through it of some eight feet in depth, and next to the river there was a large fill to be made. The inter-

venor succeeded to all the rights of the railway company, if any, to the bonds so issued and placed in escrow by the town.

The intervenor, while conceding that performance of the terms of the proposition by the railway company was a condition precedent to its right to the bonds, claims that substantial performance of such terms was sufficient, and that the facts established by the undisputed evidence show as a matter of law such performance. On the other hand, the plaintiff claims that full performance of all of the conditions upon which the bonds were to be delivered was essential to entitle the railway company to the bonds.

The rule of substantial performance of building and similar contracts, where of necessity the owner of the land upon which the structure is built retains the whole benefit of the labor and materials furnished in the erection thereof, is well settled in this state. It is this: Where a contractor has in good faith made substantial performance of the terms of the contract, but there are slight omissions and defects, which can be readily remedied, so that an allowance therefor out of the contract price will give the other party in substance what he bargained for, the contractor may recover the contract price, less the damages on account of the omissions. But the rule does not apply where the deviations from the contract are such that an allowance out of the contract price would not give the other party essentially what he contracted for. Bixby v. Wilkinson, 25 Minn. 481; O'Dea v. City of Winona, 41 Minn. 424, 43 N. W. 97; Leeds v. Little, 42 Minn. 414, 44 N. W. 309; Elliott v. Caldwell, 43 Minn. 357, 45 N. W. 845; Madden v. Oestrich, 46 Minn. 538, 49 N. W. 301; Taylor v. Marcum, 60 Minn. 292, 62 N. W. 330; Anderson v. Pringle, 79 Minn. 433, 82 N. W. 682; Cornish, Curtis & Greene Co. v. Antrim Co-op. Dairy Assn., 82 Minn. 215, 84 N. W. 724.

This rule of substantial compliance, however, does not apply to contracts for the issuing of municipal bonds to aid in the construction of a railway; for they are not within the reason of the rule. In such cases, whether the bonds are delivered or not, neither the railroad nor any part thereof ever becomes the property of the municipality; but the ownership thereof remains unimpaired in the railroad company. It parts with nothing. Memphis, K. & C.

Ry. Co. v. Thompson, 24 Kan. 182. The issuing and delivery of the bonds in such a case as this one are, and can only be, authorized by the vote of a majority of the electors of the municipality, and no officers thereof can modify or waive the conditions upon which the electors vote to authorize the delivery of the bonds. Therefore there can be no implied contract, from the conduct of the parties or otherwise, to accept performance as made for full performance as stipulated in the contract. Such an implied contract seems to be the basis of the doctrine of substantial performance of ordinary building contracts. Elliott v. Caldwell, supra. Again, where a majority of the voters of a town, whether they own any property therein or not, are authorized to, and do conditionally, incumber all of the property within the limits of the town to provide a bonus to a railroad company, strict performance of all of the conditions should be exacted of it.

We are not to be understood by this that any inconsequential or trifling departure from the terms of the contract, such as would fall within the maxim, "de minimis," would defeat the right to the bonds; but we do hold that, to entitle the railroad company to the bonds, full and complete performance of the conditions of the contract must be shown, and that substantial performance, within the rule applicable to ordinary building contracts, is not sufficient. Counsel for the intervenor, however, urges that the contrary rule has been adopted by this court, and that a substantial performance with the conditions upon which bonds were voted in aid of the construction of a railroad is all that is required. We do not so understand the decisions of this court on the subject.

The first case in which the subject of railway aid bonds was considered was Hodgman v. Chicago & St. P. Ry. Co., 20 Minn. 36 (48), in which the plaintiff, a taxpayer, sought to restrain the issuance by the city of Red Wing of its bonds, voted by it in aid of the defendant's railway. The complaint alleged that it was agreed between the city and the defendant that no portion of the bonds should be issued until the railway was fully constructed, equipped, and in operation for the transit of freight and passengers from St. Paul, by way of Red Wing, to Winona, and that no such bonds should be issued unless the railway was so constructed and

operated on or before January 1, 1871. The complaint also alleged the completion of the railway within the time limited, except an unfinished section thereof at Hastings of a mile in extent, including the Mississippi river, over which there was no bridge or railway track. The defendant interposed a general demurrer to the complaint, for the reason, among others, that the complaint showed a substantial performance of the contract on the part of the defendant. The demurrer was overruled, and the ruling was affirmed on appeal by this court in an opinion in which the necessity of a strict compliance, in contradistinction to the doctrine of a substantial performance, with all of the terms of the contract by the railroad company, was stated thus, page 45:

"The bonds were to be permitted to be issued only upon the deliberate sanction of the legal voters of the time, terms, and conditions of issuance as expressed in the ordinance and agreement. The entire authority to issue them depended upon the consent of the legal voters, not only to the issuance, but to the time, terms, and conditions of issuance. It would be sheer trifling to treat this sanction and this consent as idle forms, of no importance whatever, by permitting the city officers—the mere servants of the legal voters—to disregard the same in any substantial respect, and to disobey the instructions which they were by law bound to receive, and, of consequence, to obey."

The case was remanded to the district court, and the defendants answered, whereby the issue, among others, was presented, whether a bridge across the river at Hastings was necessary to entitle the railroad company to the bonds, and, further, whether a bridge at that point was all that was omitted by the company in the construction of its road. The trial court found in favor of the plaintiff upon the issues, and the defendants appealed; and this court held (Hodgman v. Chicago & St. P. Ry. Co., 23 Minn. 153) that the ordinance and contract providing for the issuing of the bonds did not require the building of the bridge, but that they authorized the company to adopt the then usual and ordinary means of supplying the place of the bridge,—a ferry boat.

The court in its opinion, page 157, stated that:

"The first question of controlling importance to be considered

in this case is whether, in the construction of the defendant's railway, a bridge was required to be erected across the Mississippi river by the terms of the contract between it and the city as embodied in the written agreement and ordinance."

This question was exhaustively considered by the court, and its conclusion stated in these words:

"In view of these considerations, we are of the opinion that the construction of a bridge was not absolutely required of the company by its agreement with the city. Any other mode of effecting a transfer of its passengers and freight across the river, such as was then usual and customary under like or similar circumstances, and as was adequate and reasonably convenient as such to accomplish the transit, would be a substantial compliance with the requirements of the agreement and ordinance in this respect. If the place of a bridge was supplied in this way in the present instance, and the points selected on either side of the river for making the transfer were suitable and reasonably proper,—having reference to the mode of transfer, the nature of the stream, its adjacent banks, the convenience of the public, and all the attendant circumstances,—and no portion of the line of road was left incomplete, except as between these points of transfer, then, in our judgment, the road was fully constructed within the meaning of the ordinance and agreement."

It is manifest that the court placed its decision, not upon the application of the doctrine of substantial performance applicable to ordinary building contracts, but upon the ground that the contract did not call for the erection of a bridge over the river. Hence the road was "fully constructed within the meaning of the ordinance and agreement"; that is, full performance of the contract was shown in accordance with the rule laid down by the court on the first appeal of the case.

The next case in which the question was considered was State v. Town of Clark, 23 Minn. 422, which was an action to compel the delivery of railway-aid bonds voted by the town. The condition upon which the bonds were to be delivered was that the railway company should, on or before January 1, 1875, have completed, ironed, and equipped its line of road from the village of

Wells, in the town of Clark, to the city of Mankato, and have the same in operation for the transportation of passengers and freight. The railway company completed its line from Mankato into the town of Clark, and to a point between one-fourth and one-half of a mile distant from the village. From this point it ran all of its trains on the track of the Southern Minnesota Railroad Company to the depot of the latter company in the village, under the contract for a joint use thereof between the two companies, as authorized by Sp. Laws 1870, c. 75, § 6. The court held that:

"In view of the authority thus conferred by law, the facts disclosed by the testimony above recited show a substantial compliance with the conditions upon which the relator was to be entitled to the bonds. The relator's 'line of road' from Wells to Mankato is 'completed, ironed, and equipped, and in operation for the transportation of passengers and freight,' so that the public enjoy the whole benefit of an independent line of railroad from one place to the other." Page 428.

It is clear in this case that there was a full performance of the conditions upon which the bonds were to be issued.

The next case to be noted is City of Winona v. Minnesota Ry. Const. Co., 27 Minn. 415, 6 N. W. 795, 8 N. W. 148. One of the conditions upon which the bonds were to be delivered was that the railway company should construct within a limited time a truss bridge across the river at Winona, so as to connect two lines of railway. A truss bridge was built according to the contract over all of the river as the construction company claimed. But between the banks there was a sand-bar island, containing about sixty acres of surface, which was overflowed in ordinary high water, and over this island the bridge was supported by piling. Other than this, there was built a truss bridge from bank to bank of the river. The trial court in effect found that the island was a part of the bed of the river; hence a truss bridge was not built across the entire stream, and the company was not entitled to the bonds. This court affirmed the decision of the district court, and in so doing adhered to the rule that strict compliance

with all the conditions upon which railway-aid bonds are to be delivered must be complied with. The court said:

"If this was not a truss railroad bridge, it did not meet the requirements of the contract. Plaintiff contracted for that kind of bridge, and, without its consent, no other kind, although equally as good, or even better than, a truss bridge, and although of the kind used in crossing the river at other points, could be substituted for the kind it contracted for."

The question was again considered in the case of State v. City of Minneapolis, 32 Minn. 501, 21 N. W. 722, and the rule of strict performance was reiterated in these words: "It hardly needs the citation of authorities to sustain the proposition, that, when a municipal corporation votes its bonds to aid the building of a railroad on certain terms and conditions, it is entitled to a strict and full compliance with all these terms and conditions on the part of the railroad company before the latter is entitled to the bonds."

The last case to be considered is McManus v. Duluth, C. & N. R. Co., 51 Minn. 30, 52 N. W. 980, which was an action to enjoin the delivery of certain railway aid bonds of the city of Crookston. The bonds were executed and placed in escrow, pursuant to Sp. Laws 1889, c. 205, which provided that the railroad should be completed into the city of Crookston by November 1, 1889, and that the bonds should only be delivered to the company upon full and complete compliance with the terms of the act, and, further, that upon its failure to so comply the bonds should be returned to the city. In order to fully complete the proposed railroad into the city, it was necessary to cross, at a point about a mile from the city, the track and right of way of a rival railroad one hundred ninety-one feet in width. The road was fully completed into the city by November 1, 1889, except that it was not completed across the right of way of the rival road until fourteen days thereafter. This delay was occasioned by the fact that the rival company sued out a temporary injunction enjoining such construction, whereby the two parts of the new road could be connected within the time limited. The trial court held that the condition upon which the bonds were to be delivered had not been complied with,

and enjoined their delivery, and the railway company appealed. On the argument in this court the claim was urged that there was a substantial compliance with the contract, and that under the circumstances of the case it would be manifestly unfair to deprive the railway company of the bonds which had been fairly earned. This court, however, affirmed the decision of the trial court, and held that strict, not substantial, performance of the condition upon which the bonds were to be delivered, within the time limited, was required.

After reaching the conclusion that the provision of the law and the contract as to the time within which the road was to be completed was in the nature of a condition precedent, and must be strictly complied with, the court said:

"The case is distinguishable from those of which Leeds v. Little, 42 Minn. 414, 44 N. W. 309, is an example, where the thing to be done under a contract by the party whose default is alleged consists in the bestowal of labor and material in the improvement of the property of the other party, the whole benefit of which accrues to the latter, and all of which is a complete loss to the former if he is denied any recovery for what he has done. No such case is before us. This railroad never became the property of the city of Crookston. The city had no legal interest in it, and could have none, although it was probably expected to be of some benefit to the city. The railroad company has and will enjoy the full fruits of the expenditure it has made. It is simply the case of a bonus authorized and agreed to be given to a railroad company upon a specified condition only, which condition was not complied with."

From this review of the decisions of this court we draw the conclusion that it is the settled law of this state that conditions upon which municipal railway aid bonds are to be delivered, whether found in statutes or contracts providing for their issue, are conditions precedent, and must be fully performed within the time limited; otherwise, the railway company is not entitled to the bonds.

Now, in the case under consideration, one of the conditions precedent was that the railroad should be built, ready for the

passage of cars thereon, to, into, and through the plaintiff town within the time limited by the contract. Why the voters of the town insisted upon having the condition in this precise form the record does not disclose, but it is apparent that no part of it can be considered as trivial. The condition that the road must be built through the town—that is, beyond its boundaries, not simply to the town line—may well have been inserted to prevent a stub road being built into the town, and to make it certain that the road would not only be built into the town, but would also be continued through it to points to the west or south, giving the people of the town railway connection therewith. It is conceded that the railway company did not comply with this condition until eighteen months after the time limited for its performance. On the contrary, it voluntarily stopped the construction at a point within the town, when it reached a granite ledge five hundred thirty feet from the town line. This failure to perform the condition is not merely inconsequential, and we hold that the condition upon which the bonds in this case were to be delivered was not complied with by the railway company, and that the intervenor is not entitled to them, but that the plaintiff is entitled to the bonds.

Therefore it is ordered that the order appealed from be reversed, and the cause remanded to the district court, with direction to grant the plaintiff's motion for judgment notwithstanding the verdict, as prayed for in its complaint.