[No. 6114. Decided October 13, 1906.]

## G. W. HUNT, *Respondent*, v. C. B. UPTON *et al., Appellants.*[1]

SUBSCRIPTIONS — CONSTRUCTION OF RAILROAD — CONDITIONS AS TO TERMINUS—PERFORMANCE—QUESTION FOR JURY. In an action upon a subsidy agreement for the construction of a railroad to begin "at or near W. Junction" it is for the jury to say whether the contract was performed by beginning the railroad at H. Junction, about one mile from W. Junction, considering all the circumstances with due regard to the general direction, location, and length of the road.

SAME—CONSTRUCTION OF CONTRACT—LOCATION OF MAIN LINE. A subsidy agreement for the construction of a railroad from W. Junction to W. via Eureka Flat, "said road to extend to the head of Eureka Flat," is properly construed to authorize a main line between the specified termini via the locality known as Eureka Flat, with a branch line to the head of Eureka Flat, where it appears that, to require the main line to run to the head of Eureka Flat, would in effect make the main line two sides of a triangle enclosing an acute angle (RUDKIN, J., dissenting).

SAME—PERFORMANCE OF INDIVIDUAL—INCORPORATION OF COMPANY. A subsidy agreement for the construction of a railroad by an individual is complied with by him where the contract was completed by a railroad corporation which he incorporated for the purpose of obtaining a right of way, and of which he held substantially all the capital stock.

SUBSCRIPTIONS—CONSTRUCTION—SUBSTANTIAL PERFORMANCE. A subsidy agreement between individuals in aid of the construction of a railroad is not to be strictly construed, and a substantial performance of the contract is sufficient.

Appeal from a judgment of the superior court for Walla Walla county, Gilliam, J., entered October 12, 1905, upon the verdict of a jury rendered in favor of the plaintiff, after a trial on the merits, in an action on a subscription agreement. Affirmed.

*Sharpstein & Sharpstein,* for appellants.

*Williams, Wood & Linthicum, Garrecht & Dunphy,* and *Wm. T. Muir,* for respondent.

[1]Reported in 87 Pac. 56.

CROW, J.—This action was commenced in September, 1893, to recover the sum of $2,000 and interest upon the following contract:

"Walla Walla, W. T., April 1, 1888.

"Whereas, G. W. Hunt is contemplating the construction of railroads for the purpose of furnishing additional and cheaper transportation for that portion of Washington Territory lying south of Snake River, and parts of Umatilla county, Oregon, and is soliciting assistance therein; and whereas, the undersigned is desirous of obtaining such transportation; therefore, in consideration that said G. W. Hunt or his assigns, shall within nine months from the date hereof, build and put in operation in the usual manner a standard gauge railroad, beginning at or near Wallula Junction, Washington Territory, and extending thence eastwardly, via Eureka Flat to Walla Walla, Washington Territory, the said road to extend to the head of Eureka Flat and to be completed there by December 1, 1888, and to the city of Walla Walla, W. T., by January 1st, 1889, and shall transport or cause to be transported to some convenient harbor of shipment, at tide water on Puget Sound, all produce of the country that I shall desire to ship after the construction of said road, at a rate not to exceed the rate on such produce charged from Walla Walla to Portland, on other railroads. And to aid in the execution of said enterprise, I promise to pay G. W. Hunt or his assigns, the sum of two thousand dollars, one-half of the same to be due and payable when said railroad is constructed and put in operation between said Wallula and said Walla Walla, via Eureka Flat, and the remaining half in one year from that date, said sum to be payable in cash or good and merchantable wheat, at the rate of not less than fifty cents per bushel, delivered at any depot or shipping station on said railroad. The last payment to bear interest from date of completion of the railroad aforesaid, until paid at the rate of six per cent per annum. This agreement to be deposited with the Executive Committee of the Walla Walla Board of Trade, to be delivered by them only on compliance by said G. W. Hunt with the terms hereof on his part. Should said G. W. Hunt or his assigns fail to

complete said railroad within the time designated, this agreement to be null and void.

"Attest:   J. C. Painter.     (Signed)   C. B. and Wm. H. Upton."

The plaintiff, G. W. Hunt, alleged that all of the conditions of said contract had been performed upon his part. The defendants admitted the execution of said contract, but in substance denied the other allegations of the complaint. Several affirmative defenses were pleaded, but as no evidence was admitted in support thereof, their consideration was withdrawn from the jury. From a judgment in favor of the plaintiff, this appeal has been taken.

It appears from undisputed evidence that said road was commenced at a point known as Hunt's Junction, about one mile from Wallula Junction; that it was built thence in a northeasterly direction to Eureka Station, located within that certain territory known as Eureka Flat, and that it was thence extended in a southeasterly direction to Walla Walla. It further appears that a branch line was built from Eureka Junction in a northeasterly direction to Pleasant View, which the respondent contends is located at the head of Eureka Flat.   There is no serious contention but that the road as built was completed to Pleasant View and also to Walla Walla within the stipulated time.   Nor is there any serious contention but that it maintained freight rates and rendered service to the public as required by the contract, at all times prior to the commencement of this action.   The road as constructed was not built by G. W. Hunt personally.   He organized a corporation known as the Oregon and Washington Territory Railroad Company, in which he owned substantially all of the capital stock, a few shares being held by others to perfect the organization, and said corporation built the road.   He contends that he was obliged to act through the agency of said corporation, as he had to obtain a right of way, and that being unable to secure the same by purchase, he had to

acquire it through said corporation under the right of eminent domain. He also contends that, in building the road through the agency of the Oregon and Washington Territory Railroad Company, he in fact built it himself, he being the promoting cause in securing its construction.

The trial court instructed the jury that it was for them to determine from the evidence, as an issue of fact, whether Hunt's Junction was "at or near Wallula Junction." The appellants at the trial contended and now contend that, as Hunt's Junction was one mile from Wallula Junction, it was not at or near said point, and that the respondent did not perform the conditions of the contract which required him to begin said road at or near Wallula Junction; that by reason thereof the appellants' motion for a nonsuit interposed at the proper time, should have been granted, and that the court erred in said instruction. We have carefully examined the evidence, and after considering the same in the light of all of the surrounding circumstances, and with due regard to the general location, direction and length of the road as built, think the court committed no error in submitting said issue to the jury.

The main line of the road from Hunt's Junction to Eureka Station covered a distance of about twenty-three miles, and from Eureka Station to Walla Walla a distance of about thirty-one miles. The distance upon the branch line from Eureka Station to Pleasant View was about nineteen miles. The evidence shows that the territory known as Eureka Flat, being several miles in width, commenced about six miles southwest of Eureka Station, which was located thereon, and extended thence about twenty-five miles in a northeasterly direction to, or possibly a short distance beyond, Pleasant View. The evidence as to whether Pleasant View, the northeasterly terminus of the branch road, was at the head of Eureka Flat, was conflicting, and this issue being properly submitted to the jury was decided in favor of the respondent.

On the trial the appellants contended that the contract contemplated the building of one continuous main line of road from some point at or near Wallula Junction, through Eureka Flat, to the head of said Flat, and thence to Walla Walla. In other words, that the head of Eureka Flat was to be located on the main line and that no branch line was contemplated. This would require the building of a continuous road, running first in a northeasterly direction to Walla Walla, the only termini being at Wallula Junction and Walla Walla. The evidence, which includes a map of said territory, indicates that such a line would in its general route approximate two sides of a triangle enclosing an acute angle at or near Pleasant View. The court, in instructing the jury, charged:

"It is the duty of the court to interpret and construe this contract and you must be bound by the construction of it given by the court, and I instruct you that it is not a contract to construct and operate a main line of railroad from a point at or near Wallula Junction, Washington, to Walla Walla, Washington, by way of the head of Eureka Flat, but it is a contract to construct a standard gauge railroad from a point at or near Wallula Junction, Washington, to Walla Walla, Washington, by way of Eureka Flat as a locality, and to extend either by a main or a branch line, a standard gauge railroad to the head of Eureka Flat."

The appellants have assigned error upon this instruction. We think the court's interpretation of the contract was right.

The principal contention upon which the appellants rely for a reversal is that the respondent is not entitled to recover as the road was not built by him or his assigns, but was built by the Oregon and Washington Territory Railroad Company. The court instructed the jury that, if the respondent procured the road to be constructed by said company, he had thereby complied with his contract in that regard. We think this construction of the contract was proper. The object of the appellants in making their subscription was to obtain a road which would secure them reasonable freight charges

and service in shipping their produce. There can be no question but that the respondent was the procuring and promoting cause in the construction of the road. He could not secure the necessary right of way, and was therefore compelled to organize a corporation to exercise the right of eminent domain. He not only owned substantially all of the capital stock of the said corporation, but he caused it to be organized for the express purpose of obtaining the necessary right of way and constructing the road in compliance with the terms of the contract of subscription. We see no reason why he could not do this. Nor do we understand why the appellants should not be liable to him upon such performance.

The court further instructed the jury as follows:

"Before you can find for the plaintiff you must find from the evidence that there was a substantial compliance with the conditions of the written instrument, and in arriving at your conclusions as to whether he has substantially met the conditions put upon him by this contract you have a right to consider all the surrounding circumstances, the character of the country, and the character and number of the population. In other words you must try to put yourselves in the position of the parties at the time the contract was made and decide what was their intention."

The appellants now contend that prejudicial error was committed in giving this instruction. They insist that a strict performance of the contract was necessary in every respect, and that a substantial compliance therewith was not sufficient. They claim (1) that the road should begin at Wallula Junction and not one mile therefrom; and (2) that it should have been built by the respondent personally or by his assignees, and not by any corporation not his assignee. In support of this contention for a strict and technical performance of the contract, they cite, with others, the following cases: *Town of Birch Cooley v. First Nat. Bank*, 86 Minn. 385, 90 N. W. 789; *Memphis etc. R. Co. v. Thompson*, 24

9—44 wash.

Kan. 170; *Virginia etc. R. Co. v. Lyon County*, 6 Nev. 68; *Winona v. Minnesota R. Const. Co.*, 27 Minn. 415, 6 N. W. 795, 8 N. W. 148. These cases, upon a casual examination, might appear to sustain the position assumed by appellants, but in all of them the rights and powers of municipal corporations in voting subsidies in aid of railway construction, seem to be especially involved. The principal case upon which the appellants seem to rely is that of *Town of Birch Cooley v. First Nat. Bank, supra*, in which it appears that a municipal corporation had voted bonds in aid of the construction of a railway, thereby imposing an indebtedness upon all of its taxable property. The court held a strict compliance with all of the terms of the subscription contract to be a necessary condition precedent to the issue of said bonds, and in the course of its opinion, after stating the rule of substantial compliance as applied to building and similar contracts, said:

"This rule of substantial compliance, however, does not apply to contracts for the issuing of municipal bonds to aid in the construction of a railway; for they are not within the reason of the rule. In such cases, whether the bonds are delivered or not, neither the railroad nor any part thereof ever becomes the property of the municipality; but the ownership thereof remains unimpaired in the railroad company. It parts with nothing. *Memphis etc. R. Co. v. Thompson*, 24 Kan. 182. The issuing and delivery of the bonds in such a case as this one are, and can only be, authorized by the vote of a majority of the electors of the municipality, and no officers thereof can modify or waive the conditions upon which the electors vote to authorize the delivery of the bonds. . . . Again, where a majority of the voters of a town, whether they own any property therein or not, are authorized to, and do conditionally, incumber all of the property within the limits of the town to provide a bonus to a railroad company, strict performance of all of the conditions should be exacted of it."

Later on in its opinion the court quotes with approval the following language from *State ex rel. Minneapolis etc. R. Co. v. Minneapolis*, 32 Minn. 501, 21 N. W. 722:

"It hardly needs the citation of authorities to sustain the proposition that when a municipal corporation votes its bonds to aid the building of a railroad on certain terms and conditions, it is entitled to a strict and full compliance with all these terms and conditions on the part of the railroad company before the latter is entitled to the bonds."

From this language it is apparent that a strict rule was invoked on behalf of a municipal corporation, which had endeavored to impose a burden of indebtedness upon all of its taxable property. No financial obligation of any municipal corporation is in question in this action. Although the contract here involved provides for a subsidy in aid of railroad construction, nevertheless it is between private individuals, and affects their rights only. It neither involves the power of taxation nor the right of a municipality to issue its bonds in aid of railway construction.

In *Virginia etc. R. Co. v. Lyon County, supra*, cited by appellants, the court recognized the rule that a substantial compliance with the terms of a subsidy contract was sufficient. But as there was an absolute failure on the part of the railroad company to carry out the provisions of its contract in a material respect, it was held not entitled to recover.

We have carefully examined the entire record, including the instructions given, and those refused, and from such examination are unable to conclude that any prejudicial error has been committed. The appellants have had a fair trial. The verdict is sustained by the evidence. No prejudicial error was committed in admitting or rejecting evidence, nor in denying appellants' motion for a nonsuit, nor in overruling their motion for a new trial.

The judgment is affirmed.

MOUNT, C. J., HADLEY, and ROOT, JJ., concur.

RUDKIN, J. (dissenting)—It seems to me that the contract in suit clearly calls for the construction of a continuous line of road from at or near Wallula Junction to Walla Walla by

way of the head of Eureka Flat, and that such contract is not complied with by the construction of a road from at or near Wallula Junction to Walla Walla, through Eureka Flat, with a branch or spur running to the head of the Flat. In other words, I think the main line should extend to the head of the Flat, and not a branch or spur from the main line. I therefore dissent.